**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SAMUEL E.,

             Plaintiff,

           v.

FRANK BISIGNANO,
Commissioner of Social Security
Administration,

             Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:24-cv-05059-SP

**MEMORANDUM OPINION AND ORDER**

**I.**

**INTRODUCTION**

On June 14, 2024, plaintiff Samuel E. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have fully briefed the issues in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two disputed issues for decision: (1) whether the administrative law judge ("ALJ") properly evaluated plaintiff's subjective symptom testimony regarding his headache symptoms; and (2) whether the ALJ's mental residual functional capacity

1

("RFC") assessment was supported by substantial evidence.  Plaintiff's Brief ("P. Mem.") at 4-13; *see* Defendant's Brief ("D. Mem.") at 2-8.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly evaluated plaintiff's subjective symptom testimony about his headaches, and although the ALJ may have erred in one respect in her assessment of plaintiff's RFC, the error was harmless.  Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 24 years old on his alleged disability onset date, September 1, 2014. AR at 46, 63.  He completed high school and has past relevant work as an infantry weapons crew member.  AR at 43, 276.

On May 5, 2022, plaintiff filed applications for a period of disability and DIB and for SSI due to low vision, post-traumatic stress disorder ("PTSD"), headaches, knee problems, and back problems.  AR at 47, 64.  The Commissioner denied plaintiff's applications initially and upon reconsideration, after which plaintiff filed a request for a hearing.  AR at 46-62, 63-79, 82-100, 101-119, 143-144.

On August 31, 2023, the ALJ held a hearing regarding plaintiff's claims.  AR at 36.  Plaintiff did not appear at the hearing, though his counsel did.  AR at 36-45.  The ALJ discussed the case with plaintiff's counsel and also heard testimony from Kathleen Macy-Powers, a vocational expert.  *Id.*  On November 30, 2023, the ALJ denied both of plaintiff's claims for benefits.  AR at 19-31.

Applying the well-known five-step sequential evaluation process, the ALJ found at step one, that plaintiff had not engaged in substantial gainful activity since September 1, 2014, the alleged onset date.  AR at 21.

At step two, the ALJ found plaintiff suffered from the severe impairments of migraines, PTSD, major depressive disorder with anxiety, status post ear drum mass

removal with tympanoplasty, unspecified right ear hearing loss, and right knee sprain. AR at 22.

At step three, the ALJ found plaintiff's impairments whether individually or in combination did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's RFC and determined plaintiff could perform light work with the limitations that plaintiff: can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently balance; can occasionally stoop, kneel, crouch, or crawl; must avoid all exposure to hazards including machinery and heights; due to his migraines, he must work in environments with moderate noise levels only; can understand and perform simple instructions and tasks; can maintain concentration, persistence, and pace for simple instructions and tasks for two hours at a time over an eight-hour workday; can occasionally interact with coworkers and supervisors; cannot work with the general public; and can adapt to occasional changes in the workplace. AR at 24.

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as an infantry weapons crew member. AR at 29.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including housekeeping cleaner, assembler, and marker. AR at 30-31. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. AR at 31.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals council denied. AR at 1-6. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security

Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A.    The ALJ Properly Assessed Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ failed to properly evaluate plaintiff's subjective symptoms with respect to his headaches. P. Mem. at 4-10. In particular, plaintiff argues the ALJ failed to provide clear and convincing reason to reject plaintiff's testimony regarding the debilitating effects of his cluster headaches.

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms. In adopting SSR 16-3p, the Social Security

Administration sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into a wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (citing *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.*

In assessing intensity and persistence, the ALJ may consider: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measure used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929); SSR 16-3p at *4; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons supported by substantial evidence in the record for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281, 1283-84.

1    At the first step, the ALJ found plaintiff's medically determinable impairments

2    could reasonably be expected to cause plaintiff's alleged symptoms.  AR at 25.  At the

3    second step, because the ALJ did not find any evidence of malingering, the ALJ was

4    required to provide clear and convincing reasons to discount plaintiff's testimony.  The

5    ALJ found plaintiff's "statements concerning the intensity, persistence, and limiting

6    effects of [his] symptoms are not entirely consistent with the medical evidence and other

7    evidence in the record."  *Id.*

8    The ALJ recounted plaintiff's statements regarding his headaches, including

9    having severe headaches since 2009, daily headaches since January 2021, and episodes of

10   cluster headaches where he could experience as many as five headaches in a day that

11   would drastically interrupt his schedule and ability to work.  AR at 25, 265, 296.  He did

12   not take his medications as prescribed due to experiencing rebound headaches, but

13   obtained some relief from alternative treatments such as a ZOK suction device.  AR at

14   25, 266, 296, 1086.  Plaintiff underwent excision of a right ear drum mass with

15   tympanoplasty in February 2022, which only minimally improved his symptoms, with his

16   migraines returning after the surgery.  AR at 26, 1101-02, 1085-86.  Plaintiff then

17   underwent a right Eustachian tuboplasty and nasal endoscopy on May 24, 2022, after

18   which he no longer experienced migraines or needed to use the ZOK.  AR at 26, 1239.

19   In considering plaintiff's headache testimony, the ALJ primarily found plaintiff's

20   testimony regarding the severity and limiting effects of his testimony was undermined by

21   the improvement in his headache symptoms following surgery and with conservative

22   treatment.  AR at 27.  "[E]vidence of 'conservative treatment' is sufficient to discount a

23   claimant's testimony regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d

24   742, 751 (9th Cir. 2007).  The conservative treatment here, both prior to and after

25   plaintiff's first, February 2022 surgery, was the use of the ZOK suction device, often in

26   lieu of medication.  Plaintiff reported the ZOK was "definitely beneficial/effective for

27   headache."  AR at 1096.  Yet as plaintiff notes, he continued to have headaches despite

28   using the ZOK to help relieve his pain.  Thus, while the ALJ validly pointed to the

1   conservative nature of plaintiff's treatment, by itself this is not a clear and convincing

2   reason to discount his testimony.

3       The relief plaintiff experienced from surgery is another matter.  The ALJ points to

4   the improvement plaintiff experienced following his two surgeries in 2022.  AR at 27.

5   An April 20, 2022 medical record reports plaintiff indicated he was not experiencing

6   headaches for a short period following his right tympanoplasty surgery in February 2022;

7   however, they had by then returned.  AR at 1085-86.  Plaintiff then had a right

8   Eustachian tuboplasty and nasal endoscopy on May 24, 2022, after which, according to a

9   medical record from June 12, 2022, plaintiff reported: "No more RIGHT ear fullness and

10  had not needed to use ZOK since Eustachian tuboplasty.  No more migraines.  Started

11  taking grape seed extract and oregano to deal with occasional slight head discomfort."

12  AR at 1239.

13      Plaintiff argues that improvement following surgical or conservative treatment is

14  not a legally sufficient reason to reject plaintiff's testimony.  P. Mem. at 7.  On the

15  contrary, "[a]n ALJ can properly reject a plaintiff's testimony where there is medical

16  evidence of improvement after a surgery."  *Dennis C v. Saul*, 2020 WL 4546439, at *4

17  (C.D. Cal. Aug. 5, 2020) (citing *Fletcher-Silvas v. Saul*, 791 F. App'x 647, 659 (9th Cir.

18  2019)).  The two cases plaintiff cites do not support his argument.  In both *Moisa v.*

19  *Barnhart*, 367 F.3d 882 (9th Cir. 2004), and *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.

20  1986), the Ninth Circuit discussed the issue of plaintiff's reports of pain that are

21  unsupported by objective findings, not the issue of post-surgical improvement.  *See*

22  *Moisa*, 367 F.3d at 885; *see also Cotton*, 799 F.2d at 1407.

23      Plaintiff next argues it was inappropriate for the ALJ to conclude plaintiff's

24  headache symptoms had improved because there were no additional records since the

25  June 12, 2022 treatment note concerning plaintiff's headaches.  P. Mem. at 8.  Plaintiff

26  argues the mere "lack of records does not mean that [plaintiff's] headaches were

27  completely resolved after surgery."  *Id.*  But the ALJ relied on the evidence before her,

28  which showed there had been marked improvement after plaintiff's most recent surgery.

1    The ALJ specifically referenced the June 12, 2022 medical record, which indicated

2    plaintiff had "[n]o more migraines" and experienced only "occasional slight head

3    discomfort." AR at 27, 1239. Plaintiff himself admitted in his June 2, 2022 Headache

4    Questionnaire response that he had not experienced a headache since the day before his

5    May 24, 2022 surgery. AR at 296. As defendant notes, to the extent plaintiff argues his

6    headache symptoms returned after June 2022, it was his responsibility to submit medical

7    records showing their return. D. Mem. at 4; *see Parra v. Astrue*, 481 F.3d 742, 746 (9th

8    Cir. 2007) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), *as amended* (Jan.

9    26, 1999)) ("at all times, the burden is on the claimant to establish his entitlement to

10   disability insurance benefits.") (cleaned up). The ALJ properly relied on the evidence

11   before her.

12          The ALJ also discounted plaintiff's testimony generally because his statements

13   were inconsistent with his activities of daily living. AR at 27. The ALJ reasoned

14   plaintiff's ability to care for himself, prepare simple meals, clean, do laundry, shop,

15   manage his money, read, and use message boards required the same physical and mental

16   abilities that are "necessary for obtaining and maintaining employment." *Id.* Although

17   these activities may have provided a basis for the ALJ to discount some of plaintiff's

18   other symptom testimony, the ALJ did not explain how or why these activities are

19   inconsistent with plaintiff's alleged headache symptoms. *See Rodriguez v. Berryhill*,

20   2018 WL 4637907, at *8 (C.D. Cal. Sept. 24, 2018) (quoting *Burrell*, 775 F.3d at 1138)

21   (explaining the ALJ must "elaborate on *which* daily activities conflicted with *which* part

22   of Claimant's testimony"). Nor is it readily apparent how basic daily tasks such as

23   preparing simple meals, maintaining personal hygiene, or managing money are

24   necessarily inconsistent with plaintiff's claims of severe headaches. *See Reddick*, 157

25   F.3d at 722 ("disability claimants should not be penalized for attempting to lead normal

26   lives in face of their limitations"). Accordingly, plaintiff's activities of daily living were

27   not a clear and convincing reason to discount his headache testimony, and indeed, it is

28   not even clear that the ALJ offered it as a reason to discount that testimony.

1    Accordingly, although plaintiff's daily activities did not provide an additional

2    reason to discount plaintiff's headache testimony, plaintiff's substantial improvement

3    following his May 2022 surgery was a clear and convincing reason on its own.  The ALJ

4    thus properly considered, evaluated and discounted plaintiff's subjective headache

5    testimony.

6    **B.    Any Error in the ALJ's Determination of Plaintiff's Mental RFC Was**

7    **Harmless**

8    Plaintiff next argues the ALJ's RFC assessment is not supported by substantial

9    evidence with respect to plaintiff's mental impairments related to his PTSD.  P. Mem. at

10   10-13.  In particular, plaintiff argues the "ALJ erred in using her own lay opinion to

11   evaluate [plaintiff's] raw medical data" to conclude that plaintiff "can never interact with

12   the public, occasionally interact with coworkers and supervisors and can occasionally

13   handle workplace changes."  *Id.* at 10, 12.

14   Here, the ALJ examined two sets of medical opinions that discussed plaintiff's

15   mental limitations, including some similar to those mentioned above.  The first set of

16   opinions came from the State Agency psychological consultants, who opined that

17   plaintiff has the ability to: "relate appropriately on a casual basis with the public, but with

18   limited contact to reduce stress"; "accept direction and criticism from supervisors and is

19   able to relate appropriately with co-workers"; and "adapt to routine changes in the work

20   setting."  AR at 28, 59, 76, 97, 116.  The ALJ accepted the finding regarding interactions

21   with supervisors and co-workers as persuasive.  AR at 28.  But the ALJ rejected the

22   opined limitations on interactions with the public and adapting to changes in the

23   workplace because the psychological consultants "did not adequately consider the

24   [plaintiff's] subjective complaints or the combined effect of the [plaintiff's]

25   impairments."  AR at 29-29.

26   The second medical opinion came from Dr. Joseree-Ann S. Catindig, who opined,

27   inter alia, that plaintiff has marked limitations in his abilities to: work in coordination

28   with and proximity with others without being distracted; interact appropriately with the

9

general public; get along with coworkers or peers without distracting them; maintain socially appropriate behavior; and respond appropriately to changes in the work setting. AR at 1258. The ALJ recited all of these marked limitation findings by Dr. Catindig except her finding of marked limitation in the ability to interact appropriately with the general public. AR at 29. The ALJ then found Dr. Catindig's opinion "unpersuasive, particularly with regard to the marked limitations, because it is overly restrictive" and provides "no explanation of the evidence relied on to support her assessment" and is "inconsistent with the record as a whole." *Id.*

After rejecting part of the opinions of the State Agency psychological consultants and seemingly all of Dr. Catindig's opinion, the ALJ concluded "the claimant can have no interaction with the general public and can only occasionally adapt to changes in the workplace." *Id.* The ALJ stated that she based her conclusions on the evidence discussed previously. *Id.* The ALJ also found plaintiff could "occasionally interact with coworkers and supervisors," consistent with her acceptance of the State Agency consultants' findings on that point. AR at 24, 28. The question is whether the ALJ erred in assessing the limitations on interactions with the general public and adapting to changes in the workplace that she did.

Courts have held that, "as a lay person, an ALJ is simply not qualified to interpret raw medical data in functional terms." *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (internal quotation marks and citation omitted); *see Goolsby v. Berryhill*, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017) (where record did not include any medical opinions related to plaintiff's mental abilities, ALJ erred in "render[ing] her own medical findings that Plaintiff could perform 'simple routine tasks'"). But as defendant notes, this is not binding Ninth Circuit authority. Further, it is clear the ALJ is responsible for determining RFC. *See, e.g., Rounds v. Comm'r Social Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

1     Moreover, this is not a case in which the ALJ formulated the RFC limitations in

2 question with no pertinent medical opinions in the record. On the contrary, as to

3 plaintiff's ability to adapt to changes in the workplace, the State Agency consultants

4 found no limitation on his ability to adapt to routine changes, whereas Dr. Catindig found

5 marked limitations. The ALJ rejected both of these opinions based on the evidence in the

6 record, and assessed plaintiff somewhere in the middle, finding he could adapt to

7 occasional workplace changes. This is a reasonable finding based on the evidence in the

8 record, and not a case of the ALJ simply interpreting raw data without the benefit of a

9 medical opinion.

10     The ALJ's determination that plaintiff cannot work with the general public is more

11 puzzling in light of the ALJ's stated findings. It is a rejection of the State Agency

12 opinions that plaintiff could have limited contact with the public, which is consistent with

13 what the ALJ stated. *See* AR at 29. But the ALJ's assessment that plaintiff cannot work

14 with the general public is inconsistent with the ALJ's stated rejection of Dr. Catindig's

15 opinion. Dr. Catindig found that plaintiff is markedly limited in his ability to interact

16 with the general public, yet the ALJ did not acknowledge this finding and claimed to

17 have found Dr. Catindig's marked limitation findings unpersuasive as being overly

18 restrictive and unsupported. *See* AR at 29, 1258. This leaves the basis for the ALJ's

19 determination that plaintiff cannot work with the general public unclear.

20     Even if the ALJ erred in her finding that plaintiff cannot work with the general

21 public, however, the error is harmless. In general, harmless error exists "when it is clear

22 from the record that the ALJ's error was inconsequential to the ultimate nondisability

23 determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation and

24 internal quotation marks omitted); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th

25 Cir. 2015). Here, plaintiff fails to explain how this additional limitation opined by the

26 ALJ harmed him in any way, nor does it appear it could have. The ALJ stricter limitation

27 on plaintiff's ability to interact with the public would only serve to limit the number of

28 jobs available to plaintiff, not increase them.

As for the ALJ's limitation of plaintiff to occasional workplace changes, this was not error, as discussed above.  And even if it were, it is a greater restriction than opined by the State Agency consultants.  It is a less restrictive limitation than opined by Dr. Catindig, but plaintiff has not challenged the ALJ's rejection of Dr. Catindig's opinion, thus waiving any such challenge.  *See Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) ("Plaintiff "waived . . . issues because he did not raise them before the district court."); *see also Teresa D. C. v. Saul*, 2019 WL 8198272, at *5 (C.D. Cal. Nov. 19, 2019) (collecting cases).

Accordingly, the ALJ did not err except possibly with respect to her assessment that plaintiff cannot work with the general public, but any such error was harmless.

## V.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.


Dated: September 30, 2025

SHERI PYM
United States Magistrate Judge